1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   ALICIA ALO,
                                    NO. CIV. S-04-1904 LKK/JFM
12
            Plaintiff,
13
         v.                                    O R D E R
14
     SPRINT; SPRINT COMMUNICATIONS
15   COMPANY, a Delaware corporation;
     and U.S. TELECOM, INC., a
16   Delaware corporation,

17          Defendants.
     _____/
18

19       Plaintiff brings this action against her former employer,

20   Sprint United Management Company.[1]  She alleges age discrimination,

21   sex discrimination, medical condition discrimination, harassment

22   _____

23       [1] Plaintiff also alleges claims against Sprint Communications
     Company, L.P.  This defendant has moved for summary judgment
24   premised on the declaration of DeAnna Dresel that it had no
     employees and plaintiff never worked for it.  Plaintiff has
25   objected to the declaration as without foundation and hearsay.
     That objection appears well-taken and accordingly the motion must
26   be denied.

                                    1

and retaliation.   These claims are premised on both federal and state law.   The matter is before the court on defendants' motion for summary judgment.   I decide the motion based on the papers and pleadings filed herein and after oral argument.

## I.

## FACTS[2]

Plaintiff's allegations stem from her termination of employment with Sprint.   Plaintiff is a fifty-five year old woman who began working for defendant approximately 21 years ago.   Def.'s SUF, 1.   Under defendants' retirement plan, plaintiff was entitled to begin receiving retirement benefits when her age, plus the number of years she had been working for defendants totaled the sum of "76", this is known in the company as the "Rule of 76."  See Employee Retirement Benefit Plan, Pl.'s Opp'n, Ex. 13.

In 2002, plaintiff worked in the Carrier Transport division of the Billing Department of Sprint. Def.'s SUF, 2.  In mid-2002, plaintiff was transferred from the Carrier Transport division to the Data Retros division.  Def.'s SUF, 3.  Both divisions were under the supervision of the Director of Billing Services, DeAnna Dresel and it was her decision to transfer plaintiff, Def.'s SUF, 5.  Plaintiff was told that her job duties would remain the same, despite the transfer.  Def.'s SUF, 6.  Plaintiff maintains that in reality the job responsibilities of the two jobs were different and that plaintiff was not told of her new job duties until after she

---

[2]  Facts are undisputed unless otherwise noted.

2

1  allegedly made mistakes on the new job.  Pl.'s Opp'n, Ex. 2.[3]

2      In October of 2002, plaintiff received a copy of her

3  performance review, known within the company as a "LINK."  The LINK

4  is a process by which the company rates an employee's performance,

5  addresses future performance and discusses the employee's progress

6  in the company.  See Pl.'s Opp'n, Ex. 1.

7      Plaintiff objected to the contents of the LINK review.

8  Specifically, plaintiff contested whether a mistake that cost the

9  company $6 million dollars was attributable to her.  Defendant

10 removed the assertion of a mistake from plaintiff's LINK and

11 apologized; however, the LINK was again modified, and this time it

12 attributed to plaintiff a separate $2.6 million mistake.  See Pl.'s

13 Opp'n, Exs. 4 & 5.  Through the end of 2002 and into 2003,

14 plaintiff challenged the LINK review.  See Def.'s SUF 8; Pl. Opp'n,

15 Ex. 6.

16     In April of 2003, plaintiff received a final LINK performance

17 evaluation and objected to the contents of that as well.  Pl.'s

18 Opp'n, Ex. 7; Def's SUF, 8-10.  In at least two areas, plaintiff's

19 job performance was rated as "less effective" and the evaluation

20 also discussed the asserted $2.6 million mistake.[4]

21 ───────────────────

22     [3]  The court notes that the citation to Ex. 2 (referenced in
   plaintiff's response to defendant's SUF, 6)  does not contain
23 support for the asserted fact.  The court cannot find evidentiary
   support for this alleged fact in the record.  As the Seventh
24 Circuit has aptly remarked " [j]udges are not like pigs, hunting
   for [buried] truffles . . . ."  United States v. Dunkel, 927 F.2d
25 955-56 (7th Cir. 1991).

26     [4]  The court does not have a copy of the full LINK
   evaluations.  The court takes the parties' general characterization

3

1    Between 2002 and the fall of 2004, plaintiff attempted to
2  address her concerns by confronting multiple supervisors at
3  various levels of authority.  Many e-mails were exchanged about
4  plaintiff's objections to her LINK evaluation.  <u>See</u> Def.'s SUF, 9
5  & 10; Pl.'s Opp'n, Exs. 6-8.

6    Without recounting each e-mail, it is undisputed that
7  plaintiff's complaints about her LINK review generally centered
8  around "serious disagreements with the notes and ratings" contained
9  in the LINK as well as the attribution of the asserted $2.6 million
10 dollar mistake to her.  <u>See</u>, <u>e.g.</u>, Pl.'s Opp'n, Ex. 7.  Plaintiff
11 asserts that no one met with her to address her objections to the
12 LINK report. Pl.'s Opp'n, Ex. 3.

13    As of May 2003, among plaintiff's concerns that she contends
14 were unaddressed were that her 2002 LINK was finalized without
15 discussion with her, that her ratings were changed from "effective"
16 to "less effective", causing her to lose a merit increase, and that
17 she was not supposed to be rated in her position that started after
18 September 2, 2003, but she was rated anyway.  Pl.'s Opp'n, Ex. 3.
19 Plaintiff also expressed concerns that her "20 years tenure with
20 Sprint is now threatened by this violation of the Performance
21 Management and Link Review Process." <u>Id</u>.

22    In July of 2003, e-mails were exchanged between supervisors
23 that plaintiff would be again rated as "less effective" in the 2003
24 LINK review process.  Pl.'s Opp'n, Ex. 20.

25 ─────────────
26 of the contents of the LINK as sufficient for purposes of the
   instant motion.

1    On July 31, 2003, plaintiff received a written "verbal

2  warning." Pl.'s Opp'n, Ex. 23.  The warning stated, in effect, that

3  despite weekly meetings with her supervisor, plaintiff was not

4  meeting the requirements of her position and that she needed to

5  improve her performance.  Id.  Plaintiff objected to the  warning.

6  Pl.'s Opp'n, Ex. 29.  More e-mails were exchanged between

7  supervisors about whether plaintiff's failure to improve her

8  performance warranted the next level of sanctions, a written

9  warning.  One of these e-mails, dated September 5, 2003, contained

10  the following statement:  "[Plaintiff] want's (sic) it escalated.

11  However, it has reached it's level of escalation and it's final.

12  If we go down the path of corrective action, and she ends up being

13  terminated - she can file a claim for retaliation - we will deal

14  with that if we need to." Pl.'s Opp'n, Ex. 31.

15    On September 8, 2003, plaintiff received a second written

16  warning.  This warning contained a discussion of how plaintiff

17  failed to make improvement and that she was expected to show

18  "sustained improved performance" as well as attend weekly one-on-

19  one meetings.  Pl.'s Opp'n, Ex. 33.

20    On September 11, 2003, plaintiff maintains that she performed

21  research regarding the work she was told she had completed

22  improperly, found she did it correctly and felt harassed.  At this

23  point, plaintiff became upset and fainted at work.  Pl.'s Opp'n,

24  Decl. of Alicia Alo.

25    Plaintiff went to an Emergency Room and was advised to see her

26  primary care physician the next day.  Id.  On September 12, 2003,

5

1   Dr. Alicia Sabin diagnosed plaintiff as suffering from depression
2   incident to her work environment.  Pl.'s Opp'n, Ex. 36. [5]
3   Plaintiff was on medical leave from September 2003 through January
4   2, 2004.  When plaintiff reported to work on January 2, 2004, she
5   was advised by a supervisor that she was not going to continue
6   working at Sprint and that she would have to return home and wait
7   to hear from her direct supervisor regarding her work status.
8   Pl.'s Opp'n, Decl. of Alicia Alo.  On January 5, 2004, plaintiff
9   received a call from her supervisor, advising plaintiff that she
10  had been fired.  Id.

11                              **II.**

12                           **STANDARDS**

13      Summary judgment is appropriate when it is demonstrated that
14  there exists no genuine issue as to any material fact, and that the
15  moving party is entitled to judgment as a matter of law.  Fed. R.
16  Civ. P. 56(c); See also Adickes v. S.H. Kress & Co., 398 U.S. 144,
17  157 (1970); Sicor Limited v. Cetus Corp., 51 F.3d 848, 853 (9th
18  Cir. 1995).

19      Under summary judgment practice, the moving party

20              [A]lways bears the initial responsibility of
                informing the district court of the basis for
21              its motion, and identifying those portions of
                "the pleadings, depositions, answers to
22              interrogatories, and admissions on file,

23  _____

24          [5]  Plaintiff had seen Dr. Sabin several times from June 2,
    2003 through September 12, 2003 and told Dr. Sabin that her chief
25  complaint was a harassing work environment.  Pl.'s Opp'n, Ex. 36.
    Plaintiff told her doctor that she had worked for Sprint for 20
26  years, is 3 years short of retirement and they are "trying to get
    rid of her" and "rob her of her retirement."  Id.

                                  6

> together with the affidavits, if any," which
> it believes demonstrate the absence of a
> genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Sicor Limited, 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its

7

1  pleadings, but is required to tender evidence of specific facts in

2  the form of affidavits, and/or admissible discovery material, in

3  support of its contention that the dispute exists.  Fed. R. Civ.

4  P. 56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l

5  Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.

6  1998).   The opposing party must demonstrate that the fact in

7  contention is material, i.e., a fact that might affect the outcome

8  of the suit under the governing law, Anderson v. Liberty Lobby,

9  Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Assoc. of

10 Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)

11 (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

12 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,

13 i.e., the evidence is such that a reasonable jury could return a

14 verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see

15 also Cline v. Industrial Maintenance Engineering & Contracting Co.,

16 200 F.3d 1223, 1228 (9th Cir. 1999).

17      In the endeavor to establish the existence of a factual

18 dispute, the opposing party need not establish a material issue of

19 fact conclusively in its favor.  It is sufficient that "the claimed

20 factual dispute be shown to require a jury or judge to , 04-

21 1993resolve the parties' differing versions of the truth at trial."

22 First Nat'l Bank, 391 U.S. at 290; See also T.W. Elec. Serv., 809

23 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

24 the pleadings and to assess the proof in order to see whether there

25 is a genuine need for trial.'"   Matsushita, 475 U.S. at 587

26 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

1   amendments); see also International Union of Bricklayers & Allied

2   Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401,

3   1405 (9th Cir. 1985).

4        In resolving the summary judgment motion, the court examines

5   the pleadings, depositions, answers to interrogatories, and

6   admissions on file, together with the affidavits, if any.   Rule

7   56(c); See also In re Citric Acid Litigation, 191 F.3d 1090, 1093

8   (9th Cir. 1999).   The evidence of the opposing party is to be

9   believed, see Anderson, 477 U.S. at 255, and all reasonable

10  inferences that may be drawn from the facts placed before the court

11  must be drawn in favor of the opposing party, see Matsushita, 475

12  U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,

13  655 (1962) (per curiam)).   Nevertheless, inferences are not drawn

14  out of the air, and it is the opposing party's obligation to

15  produce a factual predicate from which the inference may be drawn.

16  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45

17  (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

18       Finally, to demonstrate a genuine issue, the opposing party

19  "must do more than simply show that there is some metaphysical

20  doubt as to the material facts. . . . Where the record taken as a

21  whole could not lead a rational trier of fact to find for the

22  nonmoving party, there is no 'genuine issue for trial.'"

23  Matsushita, 475 U.S. at 587 (citation omitted).

24  ////

25  ////

26  ////

1                                **III.**

2                              **ANALYSIS**

3  **A.   AGE DISCRIMINATION**

4        Plaintiff's cause of action alleging age discrimination is

5  premised on both the federal and state statutes prohibiting such

6  conduct.[6]  The Age Discrimination Employment Act makes it "unlawful

7  for an employer . . . to fail or refuse to hire or to discharge any

8  individual or otherwise discriminate against any individual with

9  respect to his compensation, terms, conditions, or privileges of

10 employment, because of such individual's age."  29 U.S.C.

11 § 623(a)(1).

12       When a plaintiff alleges disparate treatment based on age,

13 liability depends on whether the protected trait actually motivated

14 the employer's decision.  Hazen Paper Co. v. Biggens, 507 U.S. 604,

15 610 (1993).  McDonnell Douglas and subsequent decisions have

16 "established an allocation of the burden of production and an order

17 for the presentation of proof in discriminatory-treatment cases."

18 St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

19 Accordingly, upon a motion for summary judgment:

20          The plaintiff must first establish a prima facie case of
            discrimination. If the plaintiff establishes a prima
21          facie case, the burden then shifts to the defendant to
            articulate a legitimate nondiscriminatory reason for its
22          employment decision. Then, in order to prevail, the

23  ─────────────────

24       [6]  The federal statute commences at 29 U.S.C § 623(a)(1) while
    the state statute is found at Cal. Gov't Code §§ 621 et seq.
25  (FEHA).  Claims under California's FEHA are subject to the same
    analytical framework because the objective of the statutes are the
26  same.  Horn v. Cushman & Wakefield Western, Inc, 72 Cal.App.4th
    798, 805 (1999).

                                   10

1    plaintiff must demonstrate that the employer's alleged
2    reason for the adverse employment decision is a pretext
     for another motive which is discriminatory.

3    Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir.

4    1996)(quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th

5    Cir. 1994)).[7]

6    **I.  Prima Facie Case**

7         To establish a prima facie case of age discrimination, the

8    plaintiff must tender evidence that she is (1) within the protected

9    class of individuals over forty years of age, (2) that she was

10   qualified for her position, (3) that she was discharged, and (4)

11   that a younger person with equal or inferior qualifications

12   replaced her.  Nidds v. Schindler Elevator Corp., 113 F.3d 912 (9th

13   Cir. 1996); Hersant v. Dep't of Soc. Serv., 57 Cal.App.4th 997,

14   1003 (1997).  The burden on the plaintiff at this point is not

15   onerous.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248

16   (1981).[8]

17        Plaintiff clearly establishes a prima facie case.  First,

18   because she was over forty at the time she was fired, plaintiff is

19   a member of the protected class.  Second, plaintiff's testimony is

20

21        [7]  While it is clear that plaintiff ultimately bears the
     burden of persuasion, Costa v. Desert Palace, 299 F.3d 838, 855
22   (9th Cir. 2002), aff'd, 539 U.S. 90 (2003), it is important not to
     confuse that issue with the requisites for defeating a motion for
23   summary judgment.

24        [8]  Although the cases addressing the issue sometimes reflect
     confusion, nothing in the substantive law nor in the McDonnell
25   Douglas shifting burden mode of analysis modifies Fed. R. Civ. P.
     56 nor the standards relating to the disposition of motions brought
26   pursuant to that section.

1 that she was performing competently.  Thus, even though she
2 received negative feedback on the LINK evaluations, the contents
3 of which she disputed, there is evidence that plaintiff was
4 qualified for her position.  Third, plaintiff was discharged.  And
5 fourth, several of the employees that remained in the Billings
6 department were younger and had either equal or inferior skills.

7      **ii.**  **Legitimate Nondiscriminatory Reasons for Termination**

8     Upon plaintiff's showing, it now becomes defendant's burden
9 to articulate a legitimate, nondiscriminatory reason for its
10 actions.  The burden is merely one of production, and the
11 "defendant need not persuade the court that it was actually
12 motivated by the proffered reasons." <u>Texas Dept. of Community</u>
13 <u>Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981).

14     Here, defendants have offered a nondiscriminatory reason for
15 plaintiff's termination.  Specifically, defendants claim that
16 plaintiff was let go because of her poor job performance, Def.'s
17 Reply to Opp'n at 3:1-2, and the LINK review provides an
18 evidentiary basis for that assertion.

19     **iii.**  **Pretext**

20     Under the <u>McDonnell Douglas</u> mode of analysis, the burden now
21 shifts to plaintiff to introduce evidence that the defendants'
22 reasons were pretextual.  The Supreme Court has stated that at this
23 stage "a plaintiff's prima facie case, combined with sufficient
24 evidence to find that the employer's asserted justification is
25 false, may permit the trier of fact to conclude that the employer
26 unlawfully discriminated." <u>Reeves v. Sanderson Plumbing Products</u>,

530 U.S. 133, 148 (2000).  Accordingly, because the burden on the plaintiff at summary judgment is not heavy, see, e.g., Pottenger v. Potlatch Corp., 329 F.3d 740, 746 (9th Cir. 2003), upon the tender of evidence to that effect, summary judgment should be denied.  Id.; See also Coghlan v. American Seafoods Co. LLC., 413 F.3d 1090, 1097 (9th Cir. 2005)("in many cases where the evidence is sufficient for a rational trier of fact to conclude that the employer is lying about its reason for firing or demoting the plaintiff, summary judgment will be inappropriate on that basis alone because a jury could reasonably view the employer's lie as evidence of its guilt.")

Here, plaintiff advances several reasons that undermine defendants' legitimate nondiscriminatory reason and therefore creates a genuine issue of material fact as to whether defendants' stated reason is a pretext for discrimination.

Plaintiff maintains that she was performing her job at a satisfactory level, and disputes the accuracy of the negative performance reviews she received prior to her termination.  See Pl.'s Opp'n, Decl. of Alicia Alo.  It is perhaps not without significance that it appears that only as plaintiff got older and approached retirement did she began to receive negative performance reviews.  Again, it may be significant that plaintiff was wrongly accused of a mistake that cost the company $6 million dollars.  Indeed, it was only when plaintiff challenged the accusation that defendants removed any mention of the $6 million dollar mistake from the performance review.  Soon thereafter, however, plaintiff

1   was accused of a second and separate $2.6 million dollar mistake.

2   Pl.'s Opp'n, Decl. of Alicia Alo.  Plaintiff contested both of

3   these alleged mistakes and claims that neither mistake was

4   attributable to her. Id.

5       Plaintiff also challenged the negative comments on her

6   performance reviews.  She told her supervisors that she was worried

7   that her twenty year tenure with the company was threatened. Id.

8   Plaintiff explained that she was never told exactly what she was

9   doing wrong in her job and that the negative comments in her LINK

10  evaluations failed to explain what plaintiff was doing wrong. Id.

11  Finally, plaintiff claims that when she was transferred to the new

12  unit within the Carrier group, she was never given any guidelines

13  on how to perform her new job until she would make alleged

14  mistakes.  Id.

15      It is undisputed that the negative performance reviews

16  occurred as plaintiff was getting older and only a few years from

17  retirement and the vesting of her pension plan.[9]  Finally, it is

18  also undisputed that of the thirty eight employees terminated from

19  plaintiff's division, twenty seven of those terminated were over

20  the age of forty (40).  Mot. for Summ. J., Decl. of Jeffery S. Gray

21  at 4:2.

22      Taken together, all the above suggests that there is

23  sufficient evidence for a rational trier of fact to conclude that

24

25          [9]  It seems self-evident that firing an older worker in order
    to deprive her of her retirement benefits falls comfortably within
    the prohibition against age discrimination since only older workers
26  would be subject to such conduct.  See ADEA, 29 U.S.C. § 623(a)(1).

14

1   the employer's tendered justification is mere pretext.  Proof that

2   the defendant's explanation is unworthy of credence is "one form

3   of circumstantial evidence that is probative of intentional

4   discrimination . . . ."  Reeves v. Sanderson Plumbing Products,

5   Inc., 530 U.S. 133, 134 (2002), and "once the employer's

6   justification has been eliminated, discrimination may well be the

7   most likely alternative explanation, especially since the employer

8   is in the best position to put forth the actual reason for its

9   decision."  Reeves, 530 U.S. at 134.  Accordingly, summary

10  judgment for defendants is inappropriate and the motion must be

11  denied.

12  **B.    HARASSMENT**

13      Plaintiff argues that defendants harassed her in the form of

14  blaming her for mistakes she was not responsible for and telling

15  plaintiff to stop protesting her LINK reviews.  See Opp'n to Mot.

16  for Summ. J. at 23:6-19.

17      Harassment is, of course, a form of discrimination.  Here, it

18  appears that plaintiff may be asserting that the alleged harassing

19  incidents are simply evidence of her more general claim of

20  discrimination.[10]   However, plaintiff does not explain how the

21  harassment she suffered was connected to her age, sex, or medical

22  disability.  Instead, plaintiff seems to suggest a more general

23  type of personal harassment that is not linked to discrimination.

24  _____

25      [10]  The distinction is that harassing claims require conduct
    of sufficient gravity as to cause an alteration in the conditions
    of employment.  Reno v. Baird, 18 Cal.4th 640, 646 (1998); Aguilar

26  v. Avis Rent A Car System, Inc., 21 Cal.4th 121 (1999).

Title VII is not a general civility code for the workplace and does not, for better or worse, prohibit all employment-related verbal harassment. <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75 (1998). For these reasons, summary judgment is granted on any action premised on harassment.[11]

**C.    RETALIATION**

Plaintiff alleges that defendants unlawfully retaliated against her for "engag[ing] in the protected activity of protesting the manner in which her performance review was handled. " Pl.'s Opp'n to Mot. for Summ. J. at 20: 10-12. Plaintiff's brief asserts that "once this protected activity took place, plaintiff was subjected to the adverse actions of receiving her first verbal and written warnings in 20 years . . . ." <u>Id</u>. at 13-14.[12]

To survive a motion for summary judgment, plaintiff must first show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. <u>McAlindin v. County of San Diego</u>, 192 F.3d 1226, 1238 (9th Cir. 1999). "Thereafter, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the

---

[11]    Of course this order would in no way preclude plaintiff from tendering evidence of the allegedly harassing incidents in support of her claim of discrimination.

[12]    The court notes that the plaintiff's brief is not evidence and the plaintiff's declaration is silent of the subject of previous warnings.

1   reason advanced by the employer was a pretext." <u>Id</u>.

2   In this context, "protected activity" requires the plaintiff

3   must have protested conduct prohibited by law such as age

4   discrimination.  Implicit in the definition of actionable informal

5   complaints is that the employer must be aware of the protected

6   conduct and that a plaintiff must have made clear that her

7   opposition to the employer's practices was based on grounds of

8   discrimination and not merely a dispute concerning employer conduct

9   which is not the subject of legal constraint. <u>See</u> <u>Gifford v.</u>

10  <u>Atchison, T. & S.F.R. Co.</u>, 685 F.2d 1149, 1155 (9th Cir. 1982);

11  <u>Jurado v. Eleven-Fifty Corp.</u>, 813 F.2d 1406, 1411-12 (9th Cir.

12  1987).

13  The question is whether there is any evidence to support

14  plaintiff's claim that her objections to the LINK and the warnings

15  she received was premised on her assertion that they were motivated

16  by age discrimination and that her employer knew it.  Although the

17  plaintiff has failed to marshal any evidence, two bits appear to

18  exist.  First is the fact that plaintiff suggested to her

19  supervisors that she was concerned with whether they were trying

20  to destroy her twenty years of seniority with the company and the

21  fact that she was approaching retirement. <u>See</u> n. 9.  Second was the

22  e-mail between supervisors which reads "If we go down the path of

23  corrective action, and she ends up being terminated - she can file

24  a claim for retaliation - we will deal with that if we need to."

25  Pl.'s Opp'n to Mot. for Summ. J., Ex. 31.  It is, to say the least,

26  unclear what the supervisors thought the claim of retaliation would

1  address.  Given the requirement that the court draw all reasonable

2  inferences in favor of the non-moving party, it appears proper that

3  the court draw the inference that the references were to age

4  discrimination.[13]  Given the inference, it would appear that there

5  is evidence that the employer was aware that plaintiff was

6  objecting to the treatment she was receiving not just because it

7  was unfair (a non-cognizable claim), but because it was based in

8  age discrimination.

9       Once plaintiff makes a prima facie case, the analysis of the

10  other factors parallels the McDonnell Douglas analysis addressed

11  above, resulting in the same conclusion, i.e. that summary

12  judgment must be denied.

13  **D.   SEX DISCRIMINATION**

14       Plaintiff's sex discrimination claims are not detailed in the

15  complaint or explained in the plaintiff's opposition to the motion

16  for summary judgment.  Defendants argue that the claim must fail

17  for lack of a cognizable harm.  Def.'s Mot. for Summ. J. at 9:15-

18  22.

19       Upon review of the facts, it appears that at one point,

20  plaintiff commented in her deposition that she believed defendants

21  were nicer to six specific male employees. Def.'s Mot. for Summ.

22  ////

23  ////

24  ———————————

25       [13]  Whether the inference is reasonable has caused the court
    some pause.  It is important, however, to remember that the court
    is not engaged in fact finding, but only in the discovery of a
26  genuine dispute.

18

1 J., Dep. of Alicia Alo at 236:20-24.[14]

2      Given the paucity of facts to support this claim and given

3 that plaintiff did not address the cause of action in her

4 opposition, defendants are entitled to summary judgment on the sex

5 discrimination claim.

6 **E.    MEDICAL CONDITION DISCRIMINATION UNDER THE ADA & FEHA**

7      Plaintiff maintains that she suffered from a mental

8 disability, specifically, depression and stress bought on by her

9 work environment.  Plaintiff maintains that she was discriminated

10 against based on this condition.  Pl.'s Opp'n at 22:3-10. [15]

11      To state a prima facie case under the ADA where a motion for

12 summary judgment has been made, a plaintiff must tender evidence

13 that (1) she is a disabled person within the meaning of the ADA;

14 (2) she is a qualified individual, meaning she can perform the

15 essential functions of her job; and (3) that her employer

16 terminated her because of her disability.  <u>Nunes v. Wal-Mart</u>

17 <u>Stores, Inc.</u>, 164 F.3d 1243, 1246 (9th Cir. 1999).

18      Under the ADA, "disability" is defined as "a physical or

19 mental impairment that substantially limits one or more of the

20 major life activities of the individual."  42 U.S.C. § 12102(2)(A).

21 ─────────────────

22      [14]  These were the only facts that the court discovered to
support plaintiff's sex discrimination claim.

23      [15]  Because of the similarity between state and federal
employment discrimination laws, California courts look to pertinent
24 federal precedent when applying our own statutes." <u>Guz v. Bechtel</u>
<u>National, Inc.</u>, 24 Cal.4th 317, 354 (2000).

25

26

1  The applicable federal regulations list three factors to be
2  considered in determining whether an individual is substantially
3  limited in a major life activity: "(i) The nature and severity of
4  the impairment; (ii) The duration or expected duration of the
5  impairment; and (iii) The permanent or long term impact, or the
6  expected permanent or long term impact of or resulting from the
7  impairment." 29 C.F.R. Pt. 1630.2(j)(2).

8      In the case at bar, plaintiff was first diagnosed with
9  depression and anxiety in July 2003, roughly two months prior to
10 her fainting spell and five months prior to the termination of her
11 employment. Pl.'s Opp'n, Dep. of Alicai Sabin, M.D., Ex. 36.  In
12 July, plaintiff was also placed on medication to treat depression.
13 Id.  After plaintiff fainted in September, she was on "medical
14 disability" from work for three months.  Id.

15     Depression may be a disability within the meaning of the ADA.
16 See Doe v. Region 13 Mental Health-Mental Retardation Commission,
17 704 F.2d 1402 (5th Cir. 1983); and Pritchard v. Southern Co.
18 Services, 92 F.3d 1130, 1132 (11th Cir. 1996)(defining disability
19 as a "physical or mental impairment").

20     Here, at least for the purpose of the instant motion,
21 defendants make no claim that plaintiff was not disabled.  Rather,
22 they rely on the presence of a legitimate nondiscriminatory reason
23 for the discharge.  For the same reasons noted above, the court
24 concludes that there is a genuine dispute as to defendants' motive,
25 and accordingly the motion must be denied.
26 ////

1 **F.     DISCRIMINATION IN VIOLATION OF THE UNRUH ACT**

2        Plaintiff also cites the California Unruh Civil Rights Act as

3 a grounds for relief.  The Unruh Act provides that:

4        All persons within the jurisdiction of this state are
        free     and equal, and no matter what their sex, race,
5        color, religion, ancestry, national origin, . . . are
        entitled  to  the  full  and  equal  accommodations,
6        advantages, facilities, privileges, or services in all
        business establishments of every kind whatsoever.

7

8 Cal. Civ. Code § 51.

9        The Unruh Act prohibits discrimination "by a 'business

10 establishment' in the course of furnishing goods, services or

11 facilities to its clients, patrons or customers." <u>Alcorn v. Anbro</u>

12 <u>Eng'g, Inc.</u>, 2 Cal.3d 493, 500 (1970).  The Unruh Act does not,

13 however, apply to allegations of discrimination in employment. <u>Id</u>.;

14 <u>See</u> <u>also</u> <u>Rojo v. Kliger</u>, 52 Cal.3d 65, 77 (1990) (holding that the

15 Unruh Act has no application to employment discrimination). For

16 this reason, plaintiff's claim under the Unruh Act is not

17 cognizable and summary judgment must be granted for defendants.

18        For the aforementioned reasons, the court hereby ORDERS as

19 follows:

20        1.   Defendants' motion for summary judgment as to

21 plaintiff's age discrimination claim is DENIED.

22        2.   Defendants' motion for summary judgment as to

23 plaintiff's retaliation claim is DENIED.

24        3.   Defendants' motion for summary judgment as to plaintiff's

25 medical disability claim in DENIED.

26 ////

1        4.   Defendants' motion for summary judgment as to all the

2   other causes of action listed in the complaint is GRANTED.

3        IT IS SO ORDERED.

4        DATED:   January 10, 2006

5                                 /s/Lawrence K. Karlton
                                  LAWRENCE K. KARLTON
6                                 SENIOR JUDGE
                                  UNITED STATES DISTRICT COURT
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

22